# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

WILLIAM EAGLE,             )
                                    )
       Plaintiff,           )
                                    )
       vs.                  )        Case No. 1:07CV105 LMB
                                    )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
                                    )
       Defendant.      )

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of William Eagle for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff has filed a Brief in Support of Plaintiff's Complaint. (Document Number 18). Defendant has filed a Brief in Support of the Answer. (Doc. No. 21).

## Procedural History

On February 24, 2004, plaintiff filed his application for benefits, claiming that he became unable to work due to his disabling condition on August 15, 2001. (Tr. 34, 26-28).[1] This claim

---

[1]Plaintiff previously filed applications for disability benefits on September 5, 2001, alleging the same onset date as in the current applications. (Tr. 9). These applications were denied initially and by an administrative law judge on September 26, 2003. (Id.). Plaintiff appealed the decision to this court, which affirmed the decision of the Commissioner on March 31, 2005. (Id.). The administrative law judge in the instant action found no evidence that would warrant

was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated December 21, 2006. (Tr. 19-24, 35, 57-61, 9-14). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 8, 2007. (Tr. 6, 2-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. <u>See</u> 20 C.F.R. §§ 404.981, 416.1481.

## **Evidence Before the ALJ**

### A.     **ALJ Hearing**

Plaintiff's administrative hearing was held on February 3, 2006. (Tr. 305). Plaintiff was present and was represented by counsel. (<u>Id.</u>). Vocational expert Jeffrey Magrowski was also present. (<u>Id.</u>). The ALJ began the hearing by summarizing plaintiff's case. (<u>Id.</u>). The ALJ stated that plaintiff alleged in his application for benefits that he became disabled on August 15, 2001, due to a back condition with several herniated discs with pain going down to the hip and left leg. (<u>Id.</u>). The ALJ noted that plaintiff also has a knee problem. (<u>Id.</u>). The ALJ stated that the Social Security Administration denied his claim for benefits on June 30, 2004, finding that he had the capacity to engage in a limited range of light work and a full range of sedentary work. (<u>Id.</u>).

The ALJ next admitted all of the exhibits into the record. (Tr. 300). Plaintiff's attorney then requested that plaintiff's alleged onset of disability date be amended to September 27, 2003. (Tr. 306). The ALJ granted plaintiff's attorney's request. (<u>Id.</u>).

---

reopening the prior determination and thus applied <u>res judicata</u> to the prior application. As defendant points out, however, it was not necessary to apply the doctrine of <u>res judicata</u>, as plaintiff amended his alleged disability onset date to September 27, 2003, at the hearing. (Tr. 306).

Plaintiff's attorney then examined plaintiff, who testified that he would be fifty years of age a few days following the hearing. (Tr. 308). Plaintiff stated that he completed the twelfth grade and graduated from high school. (Id.). Plaintiff's attorney noted that the record showed that he completed the eleventh grade and obtained a GED. (Id.). Plaintiff testified that his attorney was correct. (Tr. 309). Plaintiff stated that he completed the eleventh grade and obtained his GED. (Id.). Plaintiff testified that he has not received any specialized training. (Id.). Plaintiff stated that he is able to read, write, add, subtract, multiply, divide, and make change. (Id.). Plaintiff testified that he is five-feet-five-inches tall and weighs 161 pounds. (Id.).

Plaintiff stated that he tried to work since September 27, 2003. (Id.). Plaintiff testified that he worked at the City Street Department in Fisk, Missouri from April 15, 2005, to November 5, 2005. (Tr. 309-310). Plaintiff stated that he drove a tractor and pickup truck at this position. (Tr. 310). Plaintiff testified that his employer was unaware of his medical problem when he was hired. (Id.). Plaintiff stated that he experienced problems performing this job due to severe pain in his lower back that affected his ability to sit in a vehicle for long periods. (Id.). Plaintiff testified that he had to stop and get out of the vehicle to walk around or to take pain medication during his shift. (Id.). Plaintiff stated that he had to eventually quit this job due to the pain. (Tr. 311). Plaintiff testified that he did not work anywhere else from September 27, 2003, to the time of the hearing. (Id.).

Plaintiff stated that his back impairment is his biggest problem. (Id.). Plaintiff testified that he has undergone MRIs, which revealed herniated discs at L5-S1[2] and L4-L5. (Id.). Plaintiff

---

[2]The back is comprised of the cervical, thoracic and lumbar regions. In common terms, the cervical region of the spinal column is the neck; the thoracic region is the main part of the back; and the lumbar region is the lower back. There are seven cervical vertebrae, twelve thoracic

stated that he experiences pain in his lower back across the belt loop and down his left leg. (Id.).

Plaintiff testified that he experiences alternating pain and numbness. (Tr. 312). Plaintiff stated that a doctor in St. Louis indicated that he would have to undergo surgery later but believed he was too young to undergo surgery at the time. (Id.). Plaintiff testified that he did not have insurance at the time of the hearing. (Id.). Plaintiff stated that he would be willing to undergo surgery if it were recommended. (Id.).

Plaintiff testified that his back pain is constant. (Id.). Plaintiff stated that he takes over-the-counter pain medication to alleviate his pain when he is unable to see his doctor. (Id.). Plaintiff testified that he also lies around to help relieve his pain. (Tr. 313). Plaintiff stated that lying on his right side with his left leg propped helps to alleviate his pain. (Id.). Plaintiff testified that leaning forward to take pressure off his back also helps. (Id.). Plaintiff rated his pain during the hearing as a seven on a scale of zero to ten. (Id.).

Plaintiff testified that he could sit for about an hour at a job before he would have to get up to walk. (Tr. 314). Plaintiff stated that after an hour, he would take aspirin and try to walk off the pain. (Id.). Plaintiff testified that this is what he did when he worked for the City of Fisk driving a tractor. (Id.).

Plaintiff stated that he drove 120 miles to the hearing from his home. (Id.). Plaintiff testified that he had to stop one time on his way to the hearing. (Tr. 315). Plaintiff stated that he left early in the morning because he knew he would have to stop on the way. (Id.). Plaintiff testified that he does not have any other problems such as incontinence due to his back pain.

---

vertebrae, and five lumbar vertebrae. The sacrum lies directly below the fifth lumbar vertebra. The coccyx, or tail bone, lies below the sacrum. See Medical Information Systems for Lawyers, § 6:27.

(Id.).

Plaintiff stated that he experiences intermittent neck pain. (Id.). Plaintiff testified that he has a congenital fusion at C2-C3. (Id.). Plaintiff stated that he has never undergone surgery. (Id.). Plaintiff testified that he also has a bulge at C2-C3. (Tr. 316). Plaintiff stated that he experiences stiffness in his neck and occasional pain on the left side. (Id.). Plaintiff testified that his doctor told him that his neck pain was caused by his back problems. (Id.).

Plaintiff stated that he experiences headaches due to his neck and back pain. (Id.). Plaintiff testified that he has headaches once to twice a day and that he takes medication to prevent the headaches. (Id.). Plaintiff stated that he experiences severe headaches that cause him to lie down for about two hours. (Id.). Plaintiff testified that these severe headaches occur between one and three times a week. (Id.).

Plaintiff stated that he has knee problems. (Tr. 317). Plaintiff testified that he has an ACL[3] tear in his right knee. (Id.). Plaintiff stated that he has arthritis in his left knee. (Id.). Plaintiff testified that due to these knee impairments, he has to brace himself to stand. (Id.).

Plaintiff stated that he recently thought he had heart problems. (Id.). Plaintiff testified that he experienced severe chest pain that went down his left arm into his left hand and caused his fingers to swell. (Id.). Plaintiff stated that he went to Doctor's Regional Medical Center, where he underwent two heart catheterizations. (Id.). Plaintiff testified that these tests did not reveal any heart problems. (Tr. 318).

Plaintiff stated that he still experiences chest pain, which may be caused from stress due to

---

[3]The anterior cruciate ligament (ACL) is one of the four major ligaments of the knee. It connects from a posterior-lateral part of the femur to an anterior-medial part of the tibia. See Stedman's Medical Dictionary, 1081 (28th Ed. 2006).

his ongoing divorce.  (Id.).  Plaintiff testified that he is experiencing some depression and anxiety due to his divorce.  (Tr. 319).  Plaintiff stated that his back impairment is his main problem.  (Id.).

Plaintiff testified that he worked as a delivery driver for Hopkins Seed and Chemicals for seven or eight months in 1989.  (Id.).  Plaintiff's attorney stated that plaintiff indicated in a form he filled out that he worked at this position from 1989 until 2000.  (Id.).  Plaintiff testified that he has difficulty remembering dates but he knows that he only worked at the position for seven to eight months because he was unable to perform the work.  (Tr. 320).

Plaintiff stated that he did not remember where he was working immediately prior to his onset date of August 15, 2001.  (Id.).  Plaintiff stated that he only worked at Hopkins Seed and Chemicals and the City of Fisk in the past fifteen years.  (Id.).

Plaintiff testified that he drove a pickup truck to deliver chemicals at Hopkins Seed and Chemicals.  (Id.).  Plaintiff stated that he loaded and unloaded the chemicals.  (Id.).  Plaintiff testified that he lifted between 75 and 100 pounds at a time at this position.  (Id.).

Plaintiff stated that he lifted tree limbs at his position at the City of Fisk.  (Id.).  Plaintiff testified that he worked eight-hour shifts at the City of Fisk position.  (Tr. 321).  Plaintiff stated that at the end of a shift, he experienced severe back pain.  (Id.).  Plaintiff testified that he soaked in a warm tub for two to three hours to relieve his pain at the end of each shift.  (Id.).

The ALJ then examined plaintiff, who testified that his low back pain bothers him more than his neck pain.  (Id.).  Plaintiff stated that his neck occasionally hurts after seven to eight hours of holding his head in a certain position.  (Id.).  Plaintiff testified that he experiences pain when he tries to extend his neck backwards.  (Tr. 322).

Plaintiff stated that he experiences a stabbing pain in his back after sitting for an hour.

(Id.).  Plaintiff testified that after sitting for an hour, he has to walk around for about an hour to an hour-and-a-half.  (Tr. 323).  Plaintiff stated that he cannot just stand up and move around for a little while and then sit back down.  (Id.).

Plaintiff testified that he is able to stand and walk for fifteen to twenty minutes before he has to sit down.  (Id.).  Plaintiff stated that he tries to walk for an hour or so after sitting for an hour but his normal limit for standing is fifteen to twenty minutes.  (Id.).

Plaintiff testified that the heaviest item he has lifted in the past thirty days is a bag of groceries containing a few loaves of bread.  (Tr. 324).  Plaintiff stated that the bag of groceries weighed about a pound.  (Id.).  Plaintiff testified that he cannot lift a gallon container of milk because it hurts his back.  (Id.).  Plaintiff stated that if he uses his left hand to lift anything, he has pain in his neck, his left shoulder, and down his arm.  (Id.).

Plaintiff testified that he was diagnosed with GERD[4] a while before the hearing.  (Tr. 325).  Plaintiff stated that he took medication for a little while for the GERD, although Dr. Rick McGaff does not think his GERD has any bearing on his condition.  (Id.).

Plaintiff testified that Dr. McGaff told him he had a hiatal hernia[5] near his rib cage and that it would have to be fixed.  (Id.).  Plaintiff stated that Dr. McGaff indicated that he would discuss treating the hiatal hernia when plaintiff gets insurance.  (Id.).  Plaintiff testified that Dr. McGaff told him that the hiatal hernia could be causing his chest pain, although he was not certain.  (Id.).

---

[4]Gastroesophageal reflux disease (GERD) is a syndrome due to structural or functional incompetence of the lower esophageal sphincter, which permits retrograde flow of acidic gastric juice into the esophagus.  Stedman's at 556.

[5]Hernia of a part of the stomach through the esophageal hiatus of the diaphragm.  See Stedman's at 880.

Plaintiff stated that he takes over-the-counter pain medication for his back. (Id.). Plaintiff testified that he also takes pain medication that Dr. McGaff prescribed. (Id.). Plaintiff stated that he takes the prescription medication one to three times daily and that it provides more relief than the over-the-counter medication. (Tr. 326). Plaintiff testified that the medication he takes aggravates his stomach and has caused him to experience diarrhea. (Id.).

The ALJ commented that he was surprised that plaintiff took the job with the street department driving tractors and pickup trucks, as plaintiff should have recognized that it would aggravate his condition. (Id.). Plaintiff testified that his wife forced him to take the position. (Id.). Plaintiff stated that he had been having financial problems for years and his wife threatened to leave if he did not get a job. (Id.). Plaintiff testified that he tried to find a less strenuous job but there was no other job he was capable of performing. (Id.). Plaintiff stated that he did not believe there was an easier position that he could perform at the time of the hearing. (Tr. 327). Plaintiff testified that he experiences too much pain to perform any job. (Id.).

Plaintiff stated that he does not wear a back brace or a neck brace. (Id.). Plaintiff testified that he has a torn ACL. (Id.). Plaintiff stated that he has undergone an arthroscopic examination of his knee, at which time the torn ACL was discovered. (Id.). Plaintiff stated that his doctors have not indicated whether the ACL tear can be repaired surgically. (Tr. 328).

Plaintiff testified that he has never undergone surgery on his back. (Id.). Plaintiff stated that all of the neurosurgeons he has seen have told him that he is too young to undergo surgery. (Id.). Plaintiff testified that he has undergone epidural steroid injections. (Id.). Plaintiff stated that the steroid injections provide relief for twenty-four hours only. (Id.).

Plaintiff testified that he does not sleep well at night. (Id.). Plaintiff stated that he sleeps

two to two-and-a-half hours a night at the most. (Id.). Plaintiff testified that he feels sleep-deprived most of the time. (Id.). Plaintiff stated that he does not nap during the day. (Id.).

Plaintiff testified that he watches television during the day. (Tr. 329). Plaintiff stated that he tries to lie down on his right side on the couch. (Id.). Plaintiff testified that he occasionally uses a heating pad when he experiences extreme pain. (Id.). Plaintiff stated that ice packs do not provide any relief. (Id.). Plaintiff testified that he is unable to exercise. (Id.). Plaintiff stated that he participated in physical therapy but it did not provide any relief. (Id.). Plaintiff testified that his doctors told him that his back impairment is permanent. (Id.).

The ALJ noted that plaintiff appeared before an administrative law judge in 2003, at which time his claim was denied on the basis that he could perform light work. (Tr. 330). Plaintiff testified that his condition was the same at that time as it was at the time of the hearing. (Id.). Plaintiff stated that his condition has not gotten any better. (Id.).

Plaintiff testified that the worst part of his job with the City of Fisk was staying in the truck for seven to eight hours without being able to get out. (Id.). Plaintiff stated that he did not get out of the truck because he was afraid his boss would fire him. (Id.). Plaintiff testified that the people that hired him knew about his injury and concealed it from their employer. (Tr. 331). Plaintiff stated that he received two ten-minute breaks and a thirty-minute lunch at this position. (Id.). Plaintiff testified that he had to stop to take breaks outside of scheduled break times. (Id.).

Plaintiff stated that he was essentially terminated from his position with the City of Fisk because his employer discovered he was taking unscheduled breaks. (Id.). Plaintiff testified that he was also criticized by his employer for not letting them know about his back problem when he took the job. (Id.). Plaintiff stated that he has not sought employment since leaving his job with

the City of Fisk.  (Id.).

Plaintiff testified that he has been involved in a "severe" divorce case, in which the Butler County Sheriff's Department has been involved.  (Id.).  Plaintiff stated that he does not have any hobbies.  (Tr. 332).  Plaintiff testified that he does not collect anything other than VHS movies. (Id.).  Plaintiff stated that he does not participate in any social activities.  (Id.).  Plaintiff testified that he is not dating anyone.  (Id.).

Plaintiff testified that he and his wife have been separated since December of 2005.  (Tr. 333).  Plaintiff stated that there is no chance that he and his wife will reconcile.  (Id.).  Plaintiff testified that he and his wife have signed the divorce papers.  (Id.).  Plaintiff stated that he and his wife are scheduled to appear in court later that month to determine custody of their nine-year-old daughter.  (Id.).  Plaintiff testified that his daughter is currently living with his wife.  (Id.).

Plaintiff stated that he is living alone in his sister's mobile home.  (Id.).  Plaintiff testified that his sister charges him $105 a month for rent, although he is currently unable to pay the rent. (Id.).  Plaintiff stated that the State is paying for his electric.  (Id.).  Plaintiff testified that the only expense he can afford is his water bill.  (Id.).  Plaintiff stated that he does not know where his wife is living.  (Tr. 334).  Plaintiff testified that his wife and daughter are both healthy and do not draw any kind of benefits.  (Tr. 334).  Plaintiff stated that he no longer receives Medicaid benefits. (Id.).  Plaintiff testified that his Medicaid benefits and food stamps ended when his wife left.  (Id.). Plaintiff stated that he was told he would resume receiving food stamps in a month.  (Id.).

The ALJ noted that plaintiff testified fifteen to twenty minutes prior that he would rate his pain as a seven on a scale of zero to ten.  (Id.).  Plaintiff testified that his pain level had not changed since that time.  (Id.).  Plaintiff rated his pain as an eight to ten at night when he takes

pain medication. (Tr. 335). Plaintiff testified that his pain is always worse at night. (Id.). Plaintiff stated that his pain level would not decrease if he took medication at the time of the hearing. (Id.). Plaintiff testified that the only treatment that has ever provided relief was the epidural steroid injections. (Id.). Plaintiff stated that the epidural steroid injections only help for twenty-four hours and he cannot receive them on a daily basis. (Id.).

Plaintiff testified that he spends a total of about two hours lying down on the couch or on his right side in an average day. (Tr. 336). Plaintiff stated that he spends the rest of his day sitting in a chair or watching television to try to distract himself from the pain. (Tr. 337).

Plaintiff testified that he drives very little. (Id.). Plaintiff stated that he drove to the hearing because he had no one to drive him. (Id.). Plaintiff testified that he usually drives about once a month. (Tr. 338). Plaintiff stated that he drives to doctor appointments. (Id.). Plaintiff testified that his sister brings him groceries. (Id.). Plaintiff stated that his sister has complete power of attorney over him. (Id.).

Plaintiff testified that he sees a psychiatrist in Poplar Bluff for his depression. (Id.). Plaintiff stated that he could not remember the name of his psychiatrist. (Id.). Plaintiff testified that he has seen the psychiatrist four to five times and the psychiatrist has prescribed medication for him. (Tr. 339). Plaintiff stated that the psychiatrist has prescribed Wellbutrin.[6] (Id.). Plaintiff testified that he also takes Buspar.[7] (Id.). Plaintiff stated that Dr. Rick McGaff, his family physician, prescribed Wellbutrin. (Id.). Plaintiff testified that he gets his medication through his

---

[6]Wellbutrin is indicated for the treatment of depression. See Physician's Desk Reference (PDR), 1679 (57th Ed. 2003).

[7]Buspar is indicated for the treatment of anxiety. See PDR at 2517.

family physician and his psychiatrist.  (Tr. 340).  Plaintiff stated that his psychiatrist has told him that his depression is caused in part by his inability to work due to his back pain.  (Id.).

Plaintiff testified that he would not be able to work at a simple job, such as cashier, where he could sit or stand as needed.  (Id.).  Plaintiff stated that he would not be able to work at a job for eight hours a day, five days a week.  (Id.).

Plaintiff's attorney then re-examined plaintiff, who testified that he has been diagnosed with arthritis in his neck and back.  (Tr. 341).  Plaintiff stated that he took the job with the City of Fisk because he knew someone there who helped him get the job.  (Id.).  Plaintiff testified that this person hired him and concealed his medical problems from his employer.  (Id.).

The vocational expert, Jeffrey Magrowski, Ph.D., then questioned plaintiff, who testified that he worked for the Neelyville Nutrition Center washing dishes or working on the food line.  (Tr. 342).  Plaintiff stated that this position ended because it was an experiment with the state and the funding ran out.  (Id.).  Plaintiff testified that he worked as a hospital orderly.  (Id.).  Plaintiff stated that he first injured his back when working at this position.  (Tr. 343).  Plaintiff testified that he worked as a limo driver.  (Id.).  Plaintiff stated that he also worked as a stocker at K-Mart.  (Id.).

The ALJ then examined Dr. Magrowski, who testified that with plaintiff's work background, education, and assuming plaintiff were to be found limited as he testified, plaintiff would be unable to perform any job.  (Id.).

The ALJ next asked Dr. Magrowski to assume that plaintiff has degenerative disc disease of the lumbar spine, a right knee ACL incomplete tear and was limited as follows: lifting and carrying no more than twenty pounds occasionally and ten pounds frequently; standing and

walking at least two hours in an eight-hour workday with normal breaks; sitting six hours in an

eight-hour workday with normal breaks; occasionally climb ramps and stairs; never climb ladders,

ropes and scaffolds; should not engage in work where balancing his body is critical to the

performance of his duties; occasionally stoop, kneel, and crouch; never crawl; and should avoid

concentrated exposure to extreme cold, walking on wet or uneven surfaces, and vibration of the

body as one would get with operating heavy equipment such as a back hoe or a jackhammer.

(Id.).  Dr. Magrowski testified that with these limitations, plaintiff could perform his past work as

a limo driver, which is classified as light and semiskilled, and of which 2,000 exist in the state and

over 150,000 in the national economy.  (Tr. 345).  Dr. Magrowski stated that plaintiff performed

this position from 2000 to 2001.  (Id.).  Plaintiff stated that he only worked as a limo driver for

five to six months.  (Id.).  Plaintiff testified that he obtained a Class C chauffeur's license about

thirty years ago.  (Id.).  Plaintiff stated that he only had one job as a limo driver.  (Id.).

        Dr. Magrowski testified that plaintiff would be unable to perform his past work as a limo

driver or any of his other past work if the ALJ were to add to the hypothetical that the vibration

of a driving job should be avoided as likely to aggravate back pain.  (Tr. 346).  Dr. Magrowski

stated that because plaintiff does not have any transferable skills, he would be limited to sedentary

work.  (Id.).  Dr. Magrowski testified that the sedentary work base would not be significantly

eroded by the limitations set forth by the ALJ in his hypothetical.  (Id.).  Dr. Magrowski stated

that plaintiff would be able to work as a surveillance system monitor or video monitor, of which

an excess of 600 exist in the state and over 5,000 in the national economy.  (Id.).  Dr. Magrowski

testified that plaintiff could also work packing on a table, of which 1,000 jobs exist in the state

and 10,000 in the national economy.  (Id.).  Finally, Dr. Magrowski stated that plaintiff could

perform some work as an order clerk, of which over 2,000 positions exist in the state and 47,000 in the national economy. (Id.). Dr. Magrowski testified that about 20 to 30 percent of the sedentary work base would be eliminated under this hypothetical. (Tr. 347). Dr. Magrowski stated that he eliminated all light work in this hypothetical because the individual is unable to be on his feet for longer than two hours in an eight-hour day. (Id.).

Plaintiff's attorney then noted that plaintiff has been diagnosed with a lumbar disc protrusion at L5-S1 and moderate to severe stenosis on the left side of his disc protrusion at L5-S1. (Tr. 348). Plaintiff's attorney stated that he did not know whether the Social Security Administration was aware of these diagnoses when it made its residual functional capacity assessment. (Id.).

The ALJ then asked Dr. Magrowski to assume that plaintiff's musculoskeletal condition resulted in the following additional limitations: required to alternate his position between sitting and standing; unable to sit longer than an hour at one time; and unable to stand longer than 15 to 20 minutes before sitting back down. (Id.). Dr. Magrowski testified that under this hypothetical, about 50 percent of the sedentary work base would be precluded. (Id.).

The ALJ next asked Dr. Magrowski to assume that plaintiff was unable to reach, grip, rasp, push, or pull more than occasionally throughout the workday with the left hand and arm. (Id.). Dr. Magrowski testified that this would increase the number of sedentary jobs precluded to about 95 percent. (Id.).

**B.    Relevant Medical Records**

The record reveals that plaintiff presented to Rich McGath, M.D. on October 23, 2003, with complaints of chest pain, upper abdominal pain, and neck pain radiating down to the left arm.

(Tr. 264). Upon examination, plaintiff had normal range of motion of the neck but discomfort with extremes of range of motion. (Id.). Dr. McGath's assessment was chest pain and abdominal discomfort; and cervical arthritis and radiculopathy. Dr. McGath noted that plaintiff had previously undergone x-rays of the cervical spine, which revealed mild degenerative arthritis and congenital fusion of C2-C3. (Id.). Dr. McGath recommended further evaluation with an MRI of the cervical spine. (Id.).

Plaintiff saw Debbie Russell, RN, FNP, at the Pain Management Center on November 20, 2003, with complaints of pain in the low back that radiates down the left posterior thigh and calf to the ankle. (Tr. 185). Plaintiff reported that he was lifting his seventy-pound daughter three days prior when he felt a pulling sensation in the low back region with radiation pain. (Id.). Upon physical examination, plaintiff had minimal tenderness to palpation of the axioskeleton and full strength in the lower extremities. (Id.). Ms. Russell's assessment was low back pain with left lower extremity radicular pain symptoms. (Id.). Ms. Russell continued plaintiff on Ultram[8] and prescribed Skelaxin.[9] (Id.). Ms. Russell noted that because plaintiff's pain is progressively improving, he would not receive a lumbar epidural steroid injection. (Id.).

Plaintiff presented to the Kneibert Clinic on November 24, 2003, at which time he reported being upset due to marital problems. (Tr. 228). The examining physician recommended marital counseling. (Tr. 229).

Plaintiff presented to Ms. Russell on February 17, 2004, with complaints of pain in the low

---

[8]Ultram is indicated for the short-term management of acute pain. See PDR at 2509.

[9]Skelaxin is indicated for the relief of painful musculoskeletal conditions. See PDR at 1274.

back radiating down the left posterior thigh and calf down to the foot. (Tr. 182-83). Plaintiff requested a lumbar epidural steroid injection. (Id.). Upon examination, there was tenderness to palpation at the L3-L5 area, with no redness, inflammation or warmth; and plaintiff had full motor strength in the lower extremities. (Id.). Ms. Russell's assessment was low back pain with left lower extremity radicular pain symptoms; degenerative changes of the lumbar spine; and paracentral disc protrusion at L5-S1. (Id.). Ms. Russell indicated that she would request that Dr. Yuli Soeter administer a lumbar epidural steroid injection. (Id.). Dr. Soeter administered a lumbar epidural steroid injection with sedation on the same day. (Tr. 184).

Plaintiff presented to Dr. McGath on March 1, 2004, with complaints of left knee pain that began three days prior. (Tr. 261). Upon examination, plaintiff's knee was red and swollen. (Id.).

Plaintiff presented to Dr. McGath for a follow-up regarding his left knee pain on March 4, 2004. (Tr. 260). Plaintiff complained of low back pain and frequent urination. (Id.). Upon examination, plaintiff had some redness and tenderness of the left knee but normal range of motion. (Tr. 259). Dr. McGaff's assessment was low back pain, hematuria,[10] abdominal pain intermittently, hypertension stable, and knee pain. (Id.). Dr. McGaff prescribed Naprosyn[11] and Ultram, and recommended that plaintiff see an orthopedist. (Id.).

Plaintiff presented to the Kneibert Clinic on March 6, 2004, with complaints of left knee pain. (Tr. 224). Plaintiff underwent x-rays of the left knee, which revealed minimal ill-defined density along the left tibia; no evidence of fracture; and degenerative spurring along the anterior

---

[10]Blood in the urine. Stedman's at 864.

[11]Naprosyn is indicated for the treatment of osteoarthritis. See PDR at 2892.

margin of the patella. (Tr. 225).

Plaintiff presented to Ms. Russell on March 10, 2004, at which time he stated that he received 24 hours of relief with the epidural steroid injection, although after further discussion, he indicated that he actually received about two weeks of relief. (Tr. 179). Plaintiff complained of pain in the low back region that radiates down the left lower extremity down to the knee. (Id.). He also complained of left knee pain. (Id.). Upon examination, plaintiff had tenderness to palpation at L3-L5, with no inflammation, redness or warmth, and full motor strength in the lower extremities. (Id.). Ms. Russell's assessment was low back pain, left lower extremity radicular pain symptoms, degenerative changes of the lumbar spine, and paracentral disc protrusion at L5-S1. (Id.). Ms. Russell encouraged plaintiff to keep an appointment with an orthopedist regarding his left knee pain. (Id.). Dr. Soeter administered a lumbar epidural steroid injection. (Tr. 181).

Plaintiff presented to E.C. Hansbrough, M.D. on April 5, 2004. (Tr. 176). Dr. Hansbrough noted that a right knee MRI showed an ACL tear. (Id.). Plaintiff's physical examination of the left knee was asymptomatic and plaintiff had full range of motion of the left knee with no muscular atrophy. (Id.). Plaintiff underwent an x-ray of the left knee, which was normal. (Id.). Dr. Hansbrough's impression was normal left knee; no evidence of pathology. (Id.).

Plaintiff presented to Robert Hall, M.D. on April 9, 2004, with upper GI complaints including a burning sensation in the esophagus and vomiting. (Tr. 170). Dr. Hall diagnosed plaintiff with gastroesophageal reflux disease (GERD) and performed an upper endoscopy with biopsy, which revealed irregularity and redness of the distal esophagus and some looseness consistent with a small hiatal hernia. (Id.). Dr. Hall's assessment was GERD with small hiatal

hernia.  (Id.).

Joan Singer, Ph.D. completed a Psychiatric Review Technique on June 1, 2004.  (Tr. 128-40).  Dr. Singer found that plaintiff's depression and anxiety were not severe and resulted in no limitations.  (Id.).

Plaintiff presented to Theodore Koreckij, M.D., for an orthopedic evaluation at the request of the state agency on June 13, 2006.  (Tr. 157-58).  Plaintiff complained of lower back pain that began when he injured his back at work in 1995.  (Tr. 157).  Plaintiff also complained of joint pain beginning more recently.  (Id.).  Plaintiff reported that he had not worked consistently since his injury because "nobody wants to take a chance on hiring someone with low back pain." (Id.).  Plaintiff indicated that he had been working as a street superintendent of the City of Fist, Missouri, for the past year.  (Id.).  Physical examination revealed that plaintiff was muscular and well-built.  (Id.).  Dr. Koreckij noted that in the examining room, plaintiff was able to use his upper and lower extremities in a normal fashion without visible difficulty as he undressed and dressed himself, yet during the examination, all of his movements became distinctly slower and limited.  (Id.).  Although plaintiff limited his lateral bending to no more than five degrees in either direction, he was able to get up onto the examining table.  (Tr. 158).  Plaintiff was able to get from the lying to the sitting and then to the standing position without assistance. (Id.).  Plaintiff underwent x-rays of the cervical and lumbar spines and both knees, which revealed no significant narrowing of the intravertebral disc spaces, no severe arthritic changes to the sacroiliac joints, no abnormal joint space narrowing, no spondylolisthesis, and normal knees.  (Id.).  Dr. Koreckij expressed the opinion that plaintiff's subjective muscle and joint symptoms were out of proportion to the physical findings.  (Id.).  He stated that plaintiff's subjective symptoms "are the only cause

of any activity limitation that he may feel he has." (Id.).

## The ALJ's Determination

The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since August 15, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: lumbar and cervical degenerative disk disease and right knee pain (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work that involves lifting no more than 20 pounds at a time and 10 pounds frequently, standing no more than 6 hours and sitting for 6 hours during a normal 8-hour workday.  He can occasionally climb ramps, stairs, ladders, ropes and scaffolds.  In addition, he is limited to occasionally stooping, kneeling, crouching and crawling.

6.    The claimant is capable of performing past relevant work as a limo driver.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a "disability," as defined in the Social Security Act, from August 15, 2001 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 11-13A).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on February 24, 2004, the claimant is not disabled under sections 216(I)

and 223(d) of the Social Security Act.

(Tr. 13A).

**Discussion**

**A.      Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to

the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA

will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel,

222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v.

Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th

Cir. 1992).  The reviewing court, however, must consider both evidence that supports and

evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015,

1017 (8th Cir. 1996).  "[T]he court must also take into consideration the weight of the evidence

in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141

F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."

Id.

**B.      The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant

has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d

598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a

person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-

42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895

(8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial

gainful employment." If the claimant is, disability benefits must be denied.

See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the

claimant suffers from a medically severe impairment or combination of impairments.

 See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must

significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age,

education and work experience of a claimant are not considered in making the "severity"

determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of

the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial

gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in

Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or

equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See

20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the

next step which inquires into whether the impairment prevents the claimant from performing his

or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform

the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

**C.  Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in determining that plaintiff's impairments did not meet or equal a listing. Plaintiff next contends that the ALJ erred in determining plaintiff's residual functional capacity. Plaintiff finally argues that the ALJ erred in failing to obtain vocational expert testimony. The undersigned will address plaintiff's claims in turn.

**1.  Listings**

Plaintiff first argues that the ALJ erred in finding that plaintiff did not meet a listing. Specifically, plaintiff contends that his impairments meet the listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.09 through 1.13. Defendant argues that the ALJ properly determined that plaintiff did not meet a listing.

The burden of proof is on the plaintiff to establish that his or her impairment meets or

equals a listing.  Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  To meet a listing, an

impairment must meet all of the listing's specified criteria.  Id.  An impairment that manifests only

some of these criteria, no matter how severely, does not qualify.  Id. (quoting Sullivan v. Zebley,

493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)).  Although it is preferable that

ALJs address a specific listing, failure to do so is not reversible error if the record supports the

overall conclusion.  Pepper ex rel Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003).

     As defendant points out, the listings to which plaintiff refers do not exist, and plaintiff

provides no explanation regarding how he allegedly meets these listings.

     Further, the ALJ evaluated plaintiff's back impairment under the relevant listing, Listing

1.04, the listing for disorders of the spine.  Listing 1.04 provides as follows:

> *Disorders of the Spine* (e.g. herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root (including the
> cauda equina) or the spinal cord.
> With:
>     A.  Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine);
> or
>     B.  Spinal arachnoiditis, confirmed by an operative note or pathology
> report of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need for
> changes in position or posture more than once every 2 hours;
> or
>     C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by
> findings on appropriate medically acceptable imaging, manifested by chronic
> nonradicular pain and weakness and resulting in inability to ambulate effectively, as
> defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, App. 1 at 443.  The ALJ properly concluded that plaintiff's back

impairment did not meet or equal this listing because there is no evidence that plaintiff's

degenerative disc disease resulted in nerve root compression, spinal arachnoiditis, or spinal stenosis.
(Tr. 12). Thus, plaintiff's claim lacks merit.

**2.** **Residual Functional Capacity**

Plaintiff argues that the ALJ erred in assessing his residual functional capacity.
Specifically, plaintiff contends that his nonexertional limitations significantly limit his residual
functional capacity to perform his past relevant work as a limo driver. Defendant contends that the
ALJ's residual functional capacity determination is supported by substantial evidence.

In determining plaintiff's residual functional capacity, the ALJ first properly assessed the
credibility of plaintiff's subjective complaints of pain and limitation. "While the claimant has the
burden of proving that the disability results from a medically determinable physical or mental
impairment, direct medical evidence of the cause and effect relationship between the impairment and
the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d
1320, 1322 (8th Cir. 1984) (quoting settlement agreement between Department of Justice and class
action plaintiffs who alleged that the Secretary of Health and Human Services unlawfully required
objective medical evidence to fully corroborate subjective complaints). Although an ALJ may reject
a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an
express credibility determination detailing reasons for discrediting the testimony, must set forth the
inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires
the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of
the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of
medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322.

The ALJ found that the medical evidence does not support plaintiff's subjective

complaints. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ noted that Dr. Koreckij found that plaintiff had well preserved musculature in his lower and upper extremities, normal reflexes and strength, no tenderness, full range of motion in both knees, was able to get on and off the examination table with no discomfort or assistance and his gait pattern was normal prior to entering the examining room. (Tr. 13-13A, 157-58). The ALJ pointed out that x-rays taken by Dr. Koreckij revealed no scoliosis, no significant narrowing of the disc spaces throughout the spine, no severe arthritic changes in the sacroiliac joints or hips, and normal overall appearance of both knees. (Id.). Dr. Koreckij concluded that plaintiff's subjective muscle and joint symptoms are out of proportion to the physical findings and that plaintiff's subjective symptoms are the "only cause of any activity limitation that he may feel he has." (Id.). The ALJ properly concluded that Dr. Koreckij's report undermines plaintiff's credibility. The ALJ also pointed out that plaintiff reported to Dr. Koreckij that the reason he has not worked consistently since 1995 was that "nobody wants to take a chance on hiring someone with low back pain." (Tr. 13, 157). The ALJ properly noted that plaintiff's admission that his unemployment was due to no one wanting to hire him rather than being physically unable to work seriously detracts from his credibility. (Tr. 13).

The ALJ next noted that plaintiff complained of knee pain to his treating physician on only one visit. (Tr. 13A, 261). The record reveals that plaintiff complained of left knee pain only in March of 2004. (Tr. 260-61, 224, 179). Further, on April 5, 2004, Dr. Hansbrough noted that

although plaintiff had a torn ACL in the right knee, a physical examination and x-rays of the left knee were normal. (Tr. 176). Plaintiff did not complain of knee pain to any of his medical providers after this time, which significantly detracts from his credibility of disabling knee pain.

The ALJ stated that although plaintiff alleged a diagnosis of depression, there is no evidence in the medical record of any treatment sought for depression. (Tr. 12). The only reference to any mental symptoms was a note from the Kneibert Clinic dated November 24, 2003, that plaintiff mentioned having marital problems. (Tr. 228-29). The physician recommended marital counseling at that time. (Id.). Although plaintiff stated at the hearing that he had seen a psychiatrist, plaintiff did not submit records from any mental health provider. There is no evidence in the record that plaintiff suffers limitations as a result of any mental impairment. As such, the ALJ properly found that plaintiff's mental impairment was not severe. (Tr. 12).

The ALJ noted that although plaintiff sought treatment for various acute conditions in 2003 and 2004, he did not complain of disabling back pain. (Tr. 13A). The record reveals that plaintiff sought treatment for back pain only in October 2003, November 2003, February 2004, and March 2004. In fact, plaintiff did not seek any medical treatment after April 2004. This is an appropriate consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

The ALJ also pointed out that none of plaintiff's treating physicians expressed the opinion that plaintiff was unable to work or otherwise imposed any limitations on plaintiff during the relevant period. (Tr. 13A). The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability."

Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not credible is supported by substantial evidence.

After properly assessing plaintiff's credibility, the ALJ formulated the following residual functional capacity:

> [a]fter careful consideration of the record, the undersigned finds that the claimant has the residual functional capacity to perform work that involves lifting no more than 20 pounds at a time and 10 pounds frequently, standing no more than 6 hours and sitting for 6 hours during a normal 8-hour workday. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds. In addition, he is limited to occasionally stooping, kneeling, crouching and crawling.

(Tr. 13).

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)). Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ's residual functional capacity determination is supported by substantial evidence. Notably, none of plaintiff's treating physicians imposed any functional restrictions on plaintiff. As previously discussed, Dr. Koreckij concluded that plaintiff's subjective muscle and joint symptoms were out of proportion to the physical findings and that plaintiff's subjective symptoms were the only cause of any activity limitation that he may feel he has. (Tr. 158). The record does not support the presence of any greater restrictions than those found by the ALJ. Thus, the ALJ's determination that plaintiff was capable of performing light work is supported by substantial evidence.

3.    **Vocational Expert Testimony**

Plaintiff next argues that the ALJ erred by relying on the Medical Vocational Guidelines instead of eliciting the testimony of a vocational expert. Defendant contends that the ALJ properly determined that plaintiff could return to his past relevant work and thus was not required to obtain vocational expert testimony.

Throughout the disability determination process, the burden remains on the claimant until she adequately demonstrates an inability to perform her previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work as it exists in the national economy. See Beckley, 152 F.3d at 1059; 20 C.F.R. §§ 404.1520(f), 416.920(f). Plaintiff argues that the ALJ erroneously determined that he could perform his past relevant work as a limo driver. Plaintiff argues that because he had non-exertional impairments, the ALJ was required to call a vocational expert to testify.

As defendant points out, the ALJ did not rely on the Medical Vocational Guidelines in this case. Rather, the ALJ properly concluded at step four that plaintiff's residual functional capacity did not preclude the performance of plaintiff's past work as a limo driver. Further, although

vocational expert testimony was not required, the ALJ did elicit the testimony of a vocational expert at the hearing to aid in this determination. Thus, plaintiff's argument lacks merit.

## **Conclusion**

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment. Accordingly, Judgment will be entered separately in favor of defendant in accordance with this memorandum.

Dated this   18th   day of September, 2008.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE